******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## JOHN SALCE *v.* JOAN CARDELLO
## (SC 20701)

Robinson, C. J., and McDonald, D'Auria, Ecker and Alexander, Js.

### *Syllabus*

The plaintiff, who, along with the defendant, was a beneficiary of a will and a trust executed by their mother, M, appealed to the trial court from the decision of the Probate Court, which declined the plaintiff's request to enforce against the defendant the in terrorem, or no-contest, clauses contained in M's will and trust. The in terrorem clauses provided that, if a beneficiary objected in any manner to any act taken or proposed to be taken in good faith by any fiduciary, or filed any creditor's claim against the estate, that person would forfeit his or her rights as a beneficiary under the respective instrument. After M died, G became the executor of M's estate and the trustee of the trust. Subsequently, the defendant and her attorney became aware of two mistakes that G apparently made in connection with a certain tax return that he had filed on behalf of the estate. Specifically, G mistakenly listed a bank account that belonged solely to the defendant as an estate asset, and he improperly inflated the value of the estate and increased the beneficiaries' tax burdens by failing to include certain deductions. Although the defendant and her attorney brought these errors to G's attention, G declined to amend the tax return or to make the deductions unless the Probate Court instructed him to do so. The defendant then filed with the Probate Court a request for a hearing on those issues, but she later withdrew the request for unknown reasons. Thereafter, the plaintiff filed a complaint in the Probate Court, seeking to enforce the in terrorem clauses, which he alleged the defendant had violated by filing her request for a hearing. The Probate Court determined, inter alia, that the defendant had not violated the in terrorem clauses and ordered G to remove the bank account that belonged to the defendant from the accounting of the estate's assets. The plaintiff appealed to the Superior Court, which conducted a trial de novo and found, inter alia, that the defendant had not violated the in terrorem clauses because she acted in good faith, upon probable cause, and with reasonable justification when she challenged G's actions. Accordingly, the trial court rendered judgment dismissing the plaintiff's probate appeal. On appeal to the Appellate Court, that court affirmed the trial court's judgment, concluding that, although the defendant technically had violated the in terrorem clauses by challenging G's actions, enforcing those clauses would violate public policy. On the granting of certification, the plaintiff appealed to this court.

*Held* that the Appellate Court properly upheld the trial court's judgment dismissing the plaintiff's probate appeal, as the enforcement of the in terrorem clauses in M's will and trust would violate public policy by interfering with the Probate Court's exercise of its statutorily mandated supervisory responsibilities over the administration of M's estate and its superintendence of G's performance of his statutory obligations as a fiduciary:

It was undisputed that the Appellate Court correctly concluded that the defendant had technically violated the unambiguous language of the in terrorem clauses in M's will and trust when she filed a request for a hearing before the Probate Court to address G's errors in administering M's estate, and, accordingly, this court's analysis focused on whether the law provided the defendant with relief from the in terrorem clauses.

A testator may impose conditions on the vesting of his or her estate, provided the conditions are certain, lawful and not in contravention of public policy, and, although forfeiture clauses that threaten to dispossess a beneficiary who challenges the validity or terms of a will or a trust are generally valid and enforceable, they must be strictly construed against forfeiture, enforced as written, and interpreted reasonably in favor of the beneficiary.

Nonetheless, this court had previously recognized an exception to the

general rule of forfeiture when the beneficiary contesting the will or the trust had a reasonable basis for doing so, on the ground that barring all contests on penalty of forfeiture, regardless of whether the forfeiture was based on probable cause, would prevent a court from ascertaining the truth and cause property to devolve in a manner inconsistent with both statutory and common law.

Moreover, this court previously had found a forfeiture provision in a will to be void as a matter of public policy when it conflicted with a statutory right of appeal, and the protection of statutory remedies as a matter of public policy is consistent with case law from other states applying the statutory duty exception to the enforcement of in terrorem clauses, which recognizes that fiduciaries have certain statutory duties and obligations that beneficiaries should be able to enforce, and with the principle in the Restatement (Third) of Trusts that in terrorem clauses should not be enforced to the extent that doing so would interfere with the enforcement or the proper administration of a trust.

In the present case, application of the in terrorem clauses in M's will and trust implicated various statutory obligations and duties, including the defendant's statutory (§§ 45a-98 and 45a-175) right, as a beneficiary, to seek an accounting, G's statutory (§ 45a-233 (d)) obligation, as a fiduciary, to minimize the tax burden of the estate or the trust, and G's statutory (§ 45a-242 (a)) obligation, as a fiduciary, not to mismanage estate assets or to commit waste.

Furthermore, although this court acknowledged that the public policy exception to the enforcement of in terrorem clauses may interfere with its policy of construing a will to ascertain and effectuate the testator's intent, it nevertheless concluded that the testator's prerogative to dispose of his or her property as he or she sees fit must yield to the Probate Court's exercise of its power to protect the estate's assets and emphasized that the public policy exception protects only those challenges to the actions of a fiduciary that are brought in good faith.

This court reasoned that such an exception struck the proper balance between effectuating the settlor's intent to minimize litigation by way of a forfeiture provision and enabling beneficiaries to aid the Probate Court in the exercise of its statutory responsibilities to protect the estate.

In view of the trial court's supported finding that the defendant's challenge to G's conduct was brought in good faith, this court agreed with the Appellate Court's conclusion that G unquestionably had made a mistake when he listed the defendant's bank account as an estate asset and that it would violate public policy to strictly enforce the in terrorem clauses and thereby preclude the defendant from seeking judicial review to correct that mistake, without risking forfeiture, despite the potential impact of such a mistake on the defendant's finances, the assets of the estate, and the accuracy of G's filings with the Probate Court and the state.

(*One justice dissenting*)

Argued April 26—officially released September 26, 2023

*Procedural History*

Appeal from the decision of the Probate Court for the district of Branford-North Branford denying the plaintiff's request to enforce certain provisions of a will and a trust agreement, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Wilson, J.*; judgment for the plaintiff on the defendant's counterclaim and dismissing the plaintiff's appeal, from which the plaintiff appealed to the Appellate Court, *Bright, C. J.*, and *Elgo* and *DiPentima, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*William N. Wright*, with whom was *Michael P. Kaelin*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. In this certified appeal, we consider the extent to which in terrorem, or no-contest, clauses in will and trust documents are enforceable against a beneficiary who has challenged certain aspects of the performance of a fiduciary, namely, the executor of the will or the trustee of the trust. The plaintiff, John Salce, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court, which affirmed the trial court's judgment for the defendant, Joan Cardello, dismissing his probate appeal. See *Salce* v. *Cardello*, 210 Conn. App. 66, 68, 82, 269 A.3d 889 (2022). On appeal, the plaintiff principally contends that the Appellate Court incorrectly concluded that enforcement of the in terrorem clauses in the decedent's will and trust agreement against the defendant would violate public policy when she challenged the executor's refusal (1) to remove her personal bank account from the estate's Connecticut estate and gift tax return, and (2) to deduct the outstanding mortgages from the value of the estate on the return. Consistent with this court's venerable decisions in *South Norwalk Trust Co.* v. *St. John*, 92 Conn. 168, 101 A. 961 (1917), and *Griffin* v. *Sturges*, 131 Conn. 471, 40 A.2d 758 (1944), because the defendant's actions were based in good faith, we conclude that enforcement of the in terrorem clauses in the present case would violate the public policy embodied by our statutes requiring probate courts to supervise fiduciaries. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court aptly sets forth the relevant facts, as found by the trial court, and procedural history. "The plaintiff and the defendant are the son and daughter, respectively, of Mae Salce (Mae). Mae was the settlor of the Amended and Restated Mae Salce Revocable Trust Agreement (trust or trust agreement), which was established on June 29, 2005, and amended on April 3, 2008. The principal asset of the trust was Mae's interest in a piece of real property known as 113 Buffalo Bay in Madison (Buffalo Bay). The trust agreement provided that the defendant would serve as the trustee for the trust until Mae died, at which time Attorney Jay L. Goldstein would become the trustee. Pursuant to the terms of the trust agreement, on December 22, 2005, the defendant, acting as trustee of the trust, transferred a one-half interest in Buffalo Bay to herself. The trust agreement further provided that the defendant would receive the other one-half interest in Buffalo Bay at the time of Mae's death. On the same day that Mae amended the trust, she also executed her last will and testament. Consistent with the terms of the trust agreement, article third of the will provides that all of Mae's interest in Buffalo Bay was bequeathed to the defendant. It further provides that, if the defendant predeceased Mae, Mae's Interest

in Buffalo Bay would be devised to '[the defendant's] issue, per stirpes or if there shall be no such issue to [the plaintiff] if [the plaintiff] shall survive me, [or] if [the plaintiff] shall not survive me to [the plaintiff's] issue, per stirpes.' In article fourth of her will, Mae forgave the plaintiff's obligation to pay any outstanding amounts due to her pursuant to a December 22, 2001 promissory note in the principal amount of $700,000.[2] In article seventh of her will, Mae designated the defendant as the executor of her estate.

"Both the trust agreement and the will contain an in terrorem clause providing that, if a beneficiary takes certain actions, he or she forfeits his or her rights as a beneficiary under the instruments. The in terrorem clause in the trust agreement provides in relevant part: 'If [a] beneficiary under this [t]rust [a]greement . . . directly or indirectly . . . (iv) objects in any manner to any action taken or proposed to be taken in good faith by any [t]rustee . . . [and/or] (vii) files any creditor's claim against [the] [t]rustee (without regard to its validity) . . . then that person's right as a beneficiary of this [t]rust [a]greement and to take any interest given to him or her by terms of this [t]rust [a]greement . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased [the] [s]ettlor without surviving issue. . . .' The in terrorem clause in the will likewise provides in relevant part: 'If [a] beneficiary hereunder . . . directly or indirectly . . . (iv) objects in any manner to any action taken or proposed to be taken in good faith by any [e]xecutor or trustee . . . [and/or] (vii) files any creditor's claim against my [e]xecutor (without regard to its validity) or trustee . . . then that person's right as a beneficiary of this [w]ill and any [c]odicil thereto or trust . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased me without surviving issue. . . .'

"Mae died on April 12, 2012. Thereafter . . . Goldstein became the trustee of the trust pursuant to the terms of the trust, as well as the executor of Mae's estate, after the defendant declined to serve as the executor. While administering the estate . . . Goldstein sent letters to the beneficiaries, including the defendant, which detailed their required contributions for the payment of certain taxes and fees incurred by the estate. The beneficiaries were also permitted to inspect the Form CT-706/709 Connecticut Estate and Gift Tax Return (CT-706) that . . . Goldstein had filed on behalf of the estate. When the defendant reviewed the CT-706, she noticed that a Citizens Bank account that belonged solely to her mistakenly had been listed as an asset of the estate. The defendant's attorney, Alphonse Ippolito, also reviewed the CT-706. In doing so, he realized that . . . Goldstein also had inflated the value of the estate and increased the beneficiaries' tax burdens by failing to deduct two outstanding loans that were secured by

mortgages on Buffalo Bay.[3] . . .

"Ippolito raised these apparent errors with . . . Goldstein, who then asked the defendant to 'produce evidence verifying that the income received pursuant to the mortgages was expended in connection with the administration of the trust.' The defendant did so, but . . . Goldstein still refused to amend the CT-706 either to remove the Citizens Bank account or to deduct the outstanding mortgages. . . . Goldstein did, however, indicate to . . . Ippolito that he would amend the return if instructed to do so by the Probate Court. The defendant, on July 30, 2014, filed a request with the Probate Court for a hearing on these issues but later withdrew the request for unknown reasons.

"Thereafter, the plaintiff filed a complaint in the Probate Court [for the district of Branford-North Branford], alleging that the defendant's filing of her request for a hearing, and the issues raised therein, violated the in terrorem clauses in both the will and the trust agreement. Specifically, the plaintiff argued that the defendant had violated the in terrorem clauses by (1) filing a creditor's claim against the estate, and (2) challenging . . . Goldstein's refusal to amend the CT-706. Enforcement of the in terrorem clauses as requested by the plaintiff would cause Mae's [bequest] of her one-half interest in Buffalo Bay to the defendant to be nullified and, pursuant to the terms of her [trust], result in that interest being bequeathed to the plaintiff. The plaintiff, on December 17, 2015, also instituted a lawsuit in Superior Court seeking to invalidate . . . Goldstein's December, 2012 transfer by quitclaim deed of the estate's interest in Buffalo Bay to the defendant pursuant to the will and trust. In response to the plaintiff's complaint in the Probate Court, the defendant claimed that the plaintiff had violated the in terrorem clauses by delaying the administration of the estate and by instituting the Superior Court action seeking to invalidate the transfer of the estate's remaining interest in Buffalo Bay to the defendant.

"Following a hearing, the Probate Court concluded that neither the plaintiff nor the defendant had violated the in terrorem clauses. Furthermore, the Probate Court concluded that . . . Goldstein had erred in including the Citizens Bank account in the estate's assets and ordered that it be removed from the accounting." (Footnotes in original.) *Salce* v. *Cardello*, supra, 210 Conn. App. 68–71.

"The plaintiff appealed from the Probate Court's refusal to enforce the in terrorem clauses against the defendant to the Superior Court, pursuant to General Statutes § 45a-186 (b). The defendant then filed a counterclaim in that appeal, alleging that the plaintiff had violated the in terrorem clauses by instituting the December 17, 2015 action to invalidate . . . Goldstein's transfer of the estate's interest in Buffalo Bay

to the defendant pursuant to the will and the trust.

"The [trial court] held a five day trial de novo on the plaintiff's appeal and the defendant's counterclaim. Thereafter, the court issued a memorandum of decision, in which it concluded that neither party had violated the in terrorem clauses. With regard to the defendant, specifically, the court concluded that she had not violated the clauses because she (1) never filed a creditor's claim against the estate, and (2) acted in good faith, upon probable cause, and with reasonable justification when challenging . . . Goldstein's actions in administering the estate and the trust, thus excusing any violations of the in terrorem clauses." (Footnotes omitted.) Id., 72. Accordingly, the trial court rendered judgment dismissing the plaintiff's probate appeal, and for the plaintiff on the defendant's counterclaim. See id., 68, 72 and n.5.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, claiming, inter alia,[4] that "the defendant violated the in terrorem clauses when she challenged . . . Goldstein's refusal (1) to remove her Citizens Bank account from the estate's CT-706, and (2) to deduct the outstanding mortgages from the value of the estate." Id., 77. The Appellate Court agreed with the plaintiff's argument that "the defendant technically violated both clauses when she challenged . . . Goldstein's actions"; id., 78; but relied on this court's decisions in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, *Griffin* v. *Sturges*, supra, 131 Conn. 482–83, and *Peiter* v. *Degenring*, 136 Conn. 331, 335, 71 A.2d 87 (1949), along with sister state decisions in *Sinclair* v. *Sinclair*, 284 Ga. 500, 502–503, 670 S.E.2d 59 (2008), and *In re Estate of Wojtalewicz*, 93 Ill. App. 3d 1061, 1063, 418 N.E.2d 418 (1981), to conclude that "application of the clear and unambiguous language of the in terrorem clauses punishes the beneficiaries of the estate and the trust [insofar as it prevents them] from objecting to any actions of the trustee, including nondiscretionary, ministerial acts. Because such a clause undermines important private and public interests with no corresponding benefit, it violates public policy." *Salce* v. *Cardello*, supra, 210 Conn. App. 80–81; see id., 80 (noting "significant" and "important" interests of beneficiaries and state in ensuring correct tax payments). Thus, the Appellate Court concluded that, "although the defendant technically violated both in terrorem clauses when she challenged . . . Goldstein's actions in administering the estate and the trust, enforcing the clauses as written would violate public policy." Id., 82. Given this conclusion, the Appellate Court declined to decide whether the good faith and probable cause exception articulated in *South Norwalk Trust Co.* v. *St. John*, supra, 176–77, applied in this case "because the clauses are unenforceable even in the absence of such an exception." *Salce* v. *Cardello*, supra, 78. Accordingly, the Appellate Court affirmed the judg-

ment of the trial court. Id., 82. This certified appeal followed. See footnote 1 of this opinion.

We begin with the first certified question, namely, whether the defendant's actions constituted a violation of the in terrorem clauses, which is easily resolved. It is undisputed that the Appellate Court correctly concluded that the defendant had "technically violated" the unambiguous language of both in terrorem clauses, which "makes [it] clear that all challenges to any actions taken by . . . Goldstein constitute a violation of the in terrorem clauses," when she "filed an application and request for a hearing before the Probate Court, in which she challenged . . . Goldstein's preparation of the CT-706 . . . ." *Salce* v. *Cardello*, supra, 210 Conn. App. 78–79; see, e.g., *Schwerin* v. *Ratcliffe*, 335 Conn. 300, 309–10, 238 A.3d 1 (2020) (observing that "[t]he cardinal rule of testamentary construction" is to ascertain and effectuate settlor's intent as expressed in language of instrument, particularly if language is clear and unambiguous). Thus, our analysis turns to the second certified question and whether the law provides the defendant some relief from those provisions.

The plaintiff argues with respect to the second certified question that, because the Uniform Probate Code does not govern; see *Schwerin* v. *Ratcliffe*, supra, 335 Conn. 317 n.14; in terrorem clauses are enforceable in Connecticut, which, as the plaintiff points out, protects "the absolute right of a testator to dispose of his [or her] property as he or she sees fit . . . ." The plaintiff contends that the in terrorem clauses in this case did not preclude all court challenges but, instead, barred only those that would challenge the good faith actions of the fiduciary, which "mitigate[s]" the public policy concerns expressed by the Appellate Court as a reason for not enforcing the in terrorem clauses in this case. The plaintiff argues that "[n]o Connecticut case appears to have applied the so-called public policy exception to claims against the good faith actions of the fiduciary" and contends that this court's decision in *Peiter* v. *Degenring*, supra, 136 Conn. 331, on which the Appellate Court relied, does not relate to in terrorem clauses. Ultimately, the plaintiff argues that "[t]he Appellate Court's decision creates an exception to Connecticut's rule [of] enforc[ing] no-contest clauses that has not previously been adopted in Connecticut . . . [and that does not] appear to be recognized in any other state," which "is inconsistent with Connecticut's public policy and law [of] enforc[ing] the clear terms of a testator's or settlor's documents."

In response, the defendant contends that the Appellate Court properly held that it would violate public policy for "a beneficiary [to] be disinherited through the enforcement of an in terrorem clause for raising before the Probate Court and seeking to correct the clear-cut and ministerial errors of the fiduciary in his

administration of an estate and a trust."[5] Relying on *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, *Griffin* v. *Sturges*, supra, 131 Conn. 482–83, and *Peiter* v. *Degenring*, supra, 136 Conn. 335, the defendant argues that the in terrorem clauses are unenforceable under the circumstances of the present case because their enforcement "would have the effect of penalizing [her] for seeking to correct . . . Goldstein's mistakes in the preparation of the CT-706," as well as for "objecting to, for example, the discretionary investment decisions by a fiduciary . . . ." As sources of "public policy in favor of the correct administration of an estate or a trust by a fiduciary," the defendant relies on (1) a beneficiary's right to seek an accounting in the Probate Court under General Statutes §§ 45a-98 and 45a-175,[6] (2) the fiduciary's obligations under General Statutes § 45a-233 (d)[7] to minimize the tax burden of the estate or trust, and (3) a fiduciary's obligation under General Statutes § 45a-242 (a)[8] "not to mismanage estate assets or commit waste." Observing that Goldstein "effectively invited" her to seek intervention by the Probate Court after "refus[ing] to correct his errors [in the absence of] a court order," the defendant emphasizes that application of the in terrorem clauses in the way advocated by the plaintiff would "have the effect of barring the defendant from seeking redress in the courts to correct the fiduciary's mistakes on the [CT-706], namely, the erroneous inclusion of the Citizens [Bank] account and the failure to account for the two loans in the value of the estate."[9] We agree with the defendant and conclude that the Appellate Court correctly determined that enforcement of the in terrorem clauses in this case would violate public policy.

"An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or [common-law] jurisdiction, but of a Probate Court. . . . [When], as in the present case, no record was made of the probate proceedings, the Superior Court was required to undertake a de novo review of the Probate Court's decision." (Citation omitted; internal quotation marks omitted.) *Hynes* v. *Jones*, 175 Conn. App. 80, 92–93, 167 A.3d 375 (2017), rev'd on other grounds, 331 Conn. 385, 204 A.3d 1128 (2019); see General Statutes § 45a-186 (b) through (d); *Andrews* v. *Gorby*, 237 Conn. 12, 15–16, 675 A.2d 449 (1996); see also *In re Probate Appeal of Harris*, 214 Conn. App. 596, 600–601, 282 A.3d 467 (discussing more limited standard of review set forth in General Statutes § 45a-186b for "appeals taken under . . . § 45a-186 from a matter heard on the record in the Probate Court" (footnote omitted)), cert. denied, 345 Conn. 918, 284 A.3d 299 (2022). Because the trial court

and the Appellate Court considered issues of law, our review on appeal is plenary. See, e.g., *Hynes* v. *Jones*, supra, 93.

"A testator may impose such conditions as he pleases [on] the vesting or enjoyment of the estate he leaves, provided they are certain, lawful and not opposed to public policy." *Peiter* v. *Degenring*, supra, 136 Conn. 335. This includes in terrorem, or no-contest, clauses, which are defined as "provision[s] designed to threaten one into action or inaction; [especially], a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will." Black's Law Dictionary (11th Ed. 2019) p. 1258; accord *McGrath* v. *Gallant*, 143 Conn. App. 129, 132 n.1, 69 A.3d 968 (2013). As the Appellate Court recognized, the leading Connecticut decision with respect to in terrorem clauses is this court's 1917 opinion in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 168, which was a will contest. See, e.g., *Salce* v. *Cardello*, supra, 210 Conn. App. 74, 81. In *South Norwalk Trust Co.*, this court noted that "[s]ubstantially all authorities agree that a testator may in some cases impose [on] a [beneficiary] a condition forfeiting his legacy if he contest[s] the validity of the will." *South Norwalk Trust Co.* v. *St. John*, supra, 174; see id., 174–75 (recognizing distinction drawn by English courts of equity, but rejected by majority of American courts, which enforced conditions "as to legacies of personal property, but not as to devises of land"). This court further observed that, because "the testator may attach any condition to his gift [that does not violate] law or public policy, the [beneficiary] must either take the gift with its conditions or reject it. The disposition of these authorities has been to sustain forfeiture clauses as a method of preventing will contests, which so often breed family antagonisms and expose family secrets better left untold, and result in a waste of estates through expensive and long drawn-out litigation."[10] Id., 175.

Nevertheless, it is black letter law that such in terrorem provisions "must be strictly construed against forfeiture, enforced as written, and interpreted reasonably in favor of the beneficiary. No wider scope can be given to the [verbiage] employed than is plainly required; nor may the court place a strained or overly technical construction [on] the language. Forfeiture provisions in a will are to be strictly construed, and forfeiture [is to be] avoided if possible. Testamentary dispositions are presumed to vest at the testator's death, and cannot be divested unless the precise contingency prescribed by the testator occurs. It is only [when] the acts of the parties fall strictly within the express terms of the punitive clause of the will that a breach may be declared." (Footnotes omitted.) *In re Estate of Westfahl*, 674 P.2d 21, 24 (Okla. 1983); see, e.g., 80 Am. Jur. 2d, Wills § 1323 (2023) ("[a]s a general rule, such clauses are valid but are construed strictly and without extension beyond their express terms" (footnote omitted)).

In *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 168, this court considered various exceptions to this "general rule of forfeiture . . . ."[11] Id., 175–76. Of particular relevance to this appeal, this court considered the "exception that a contest for which there is a reasonable ground will not work a forfeiture . . . ." Id., 176. The court observed that, although it was a minority view at the time, it was the "better reason[ed]" position because it "rests [on] a sound public policy. The law prescribes who may make a will and how it shall be made; that it must be executed in a named mode, by a person having testamentary capacity and acting freely, and not under undue influence. The law is vitally interested in having property transmitted by will under these conditions, and [no] others." Id. The court posited that "only [those] who have an interest in the will . . . will have the disposition to lay the facts before the court. If they are forced to remain silent, upon penalty of forfeiture of a legacy or devise given them by the will, the court will be prevented by the command of the testator from ascertaining the truth; and the devolution of property will be had in a manner against both statutory and common law. *Courts exist to ascertain the truth and to apply the law to it in any given situation; and a right of devolution [that] enables a testator to shut the door of truth and prevent the observance of the law, is a mistaken public policy.* If, on contest, the will would have been held invalid, the literal interpretation of the forfeiture provision has suppressed the truth and impeded the true course of justice. If the will should be held valid, no harm has been done through the contest, except the delay and the attendant expense." (Emphasis added.) Id., 176–77. The court emphasized that "[t]he effect of broadly interpreting a forfeiture clause as barring all contests on penalty of forfeiture, whether made [upon] probable cause or not, will furnish those who would profit by a will procured by undue influence, or made by one lacking testamentary capacity, with a helpful cover for their wrongful designs." Id., 177. Thus, the court reiterated that, given the aid furnished to the court by the good faith challenger, "[t]he contest will not defeat the valid will, but it may, as it ought, the invalid will." Id. "[When] the contest has not been made in good faith, and upon probable cause and reasonable justification, the forfeiture should be given full operative effect. [When] the contrary appears, the [beneficiary] ought not to forfeit his legacy." Id.; see id., 178 (This court deemed the good faith exception inapplicable because "[t]he facts of record [were] silent as to whether this contest was begun in good faith, and whether there was probable cause and reasonable justification. The stipulated facts [did] not bring the case within this exception.").

With respect to the public policy issues presented by the second certified question, we find particularly instructive this court's decision in *Griffin* v. *Sturges*,

supra, 131 Conn. 471. In *Griffin*, the court first upheld the validity of a will provision that both required the testator's son to "give up and refrain from the use of intoxicating liquor" in order "to receive the income from the entire estate" and left to the Probate Court the factual determination of whether the son complied with that provision. Id., 480, 482; see id., 482 (emphasizing duty of "the trustee under the will . . . to account to the Probate Court, which [had] jurisdiction over the settlement of his account"). Significantly, though, this court invalidated that provision to the extent it rendered "the order of the [Probate Court] . . . conclusive and [provided that] *no appeal shall be allowed* . . . ." (Emphasis added.) Id., 482. This court held that "this incidental provision" of the clause was void as a matter of public policy; id., 483; because it was "contrary to the statutes giving a right of appeal from any decree of a Court of Probate to the Superior Court . . . ." (Citation omitted.) Id., 482–83.

Several more recent sister state decisions are consistent with *Griffin*'s protection of statutory remedies as a matter of public policy, particularly insofar as in terrorem clauses directed at challenges to fiduciary conduct implicate public policy concerns different from those directed at document formation; this is particularly so in the trust context of the present case. See D. Gordon, "Forfeiting Trust," 57 Wm. & Mary L. Rev. 455, 508–512 (2015). These cases are consistent with what has been described as "the statutory duty exception" to the enforcement of in terrorem clauses; M. Begleiter, "Anti-Contest Clauses: When You Care Enough To Send the Final Threat," 26 Ariz. St. L.J. 629, 652 n.149 (1994); see id., 652–53; because an "executor has a statutory duty to account that the beneficiaries can and should enforce," with "[o]bjections to the fiduciary's accounting on the ground of mismanagement, delay or other failure not violating a no-contest clause" being "one common example . . . ." Id., 670. The cases are also consistent with § 96 (2) of the Restatement (Third) of Trusts, which provides that "[a] no-contest clause shall not be enforced to the extent that doing so would interfere with the enforcement or proper administration of the trust." 4 Restatement (Third), Trusts § 96 (2), p. 28 (2012); see id., comment (e), pp. 31–32 (describing relationship between provision, which permits attacks on exercise of trustee's discretion, and in terrorem clauses oriented toward more traditional will contests).

With respect to these statutory duty cases, we deem especially persuasive the Georgia Supreme Court's decision in *Sinclair* v. *Sinclair*, supra, 284 Ga. 500. In *Sinclair*, the court considered whether an in terrorem clause would cause a beneficiary to forfeit his interest under a will by bringing an action for an accounting and the removal of the executor. Id., 501. In addition to strictly construing the clause not to "amount to a contest of the will by objecting to its probate," the

court further held that "it would violate public policy to construe the condition in terrorem so as to require the forfeiture of a beneficiary's interest for bringing an action for accounting and removal of the executor." (Internal quotation marks omitted.) Id., 502. The court emphasized that, "[a]fter a will has been admitted to probate, certain duties and obligations are thereupon imposed by law on the named executor. He has no arbitrary powers to avoid the provisions of a will [that] he is appointed to execute, and the provision . . . being considered cannot be construed to confer any such unbridled authority. The executor, therefore, remains amenable to law in all his acts and doings as such, and a beneficiary under the will, in seeking to compel the performance . . . of his duty, will not be penalized for so doing." (Internal quotation marks omitted.) Id., 502–503. The court concluded that "a condition in terrorem cannot make an executor unanswerable for any violations of the will or of the laws governing personal representatives in Georgia. A beneficiary assuredly is empowered to enforce the provisions of a [will], no matter the terms of any in terrorem clause." (Internal quotation marks omitted.) Id., 503.

Similarly, in *In re Estate of Wojtalewicz*, supra, 93 Ill. App. 3d 1061, the Illinois Appellate Court concluded that the in terrorem clause of a will clearly and unambiguously expressed the testator's intent to "[forbid] any proceeding to challenge any of the provisions of the will," including its provision naming the executor. (Emphasis omitted.) Id., 1062. The court concluded, however, that enforcement of the in terrorem clause "would violate the law and public policy of [Illinois]. First, it would deprive [the putative beneficiary] of his statutory right . . . to request the court to deny the appointment of the executor for the latter's failure to initiate a proceeding to have the will admitted to probate within [thirty] days of acquiring knowledge of being named as executor in the will." (Citation omitted.) Id., 1063. The court emphasized that "it would violate public policy to give effect to the in terrorem clause [because] its enforcement would endanger the assets of the estate. Courts closely scrutinize an executor's behavior to [ensure] that the standards of fair dealings and diligence of an executor toward the estate are adhered to. . . . It is the duty of the executor to properly manage the estate and protect it from [wilful] waste. . . . The [putative beneficiary] sought to deny the appointment of the executor on grounds that the executor's lengthy period of inaction and his failure to file proper tax returns caused the estate to incur substantial penalties." (Citations omitted.) Id. The court concluded that "a [beneficiary] under [the] will . . . [could not] be terrorized into relinquishing his legacy by any threat of forfeiture. Otherwise, he would be forced to stand by silently while the executor jeopardizes the assets of the estate. [The court would] not allow this result, because it per-

mits the estate to be subject to waste and thereby diminishes the desired share of each beneficiary chosen by the testator under her will." Id., 1064; see *In re Estate of Ferber*, 66 Cal. App. 4th 244, 253, 77 Cal. Rptr. 2d 774 (1998) ("The power of the court is invoked in probate matters, at least in substantial measure, to protect the estate and [to] ensure its assets are properly protected for the beneficiaries. [No-contest] clauses that purport to insulate executors completely from vigilant beneficiaries violate the public policy behind court supervision."); *In re Estate of Prevratil*, 121 App. Div. 3d 137, 148, 990 N.Y.S.2d 697 (2014) (given narrow construction of no-contest clauses, declining to "conclude that [the] decedent intended to preclude [the] petitioners from seeking letters of administration in the face of the named fiduciaries' inaction," and observing that, "even if [the] decedent's intent were to prohibit a beneficiary from questioning the conduct of a nominated fiduciary, such a broad [no-contest] clause would be void" under statutes governing fiduciaries); *Barr* v. *Dawson*, 158 P.3d 1073, 1076 (Okla. Civ. App. 2006) (discussing case law holding that spousal election does not invoke no-contest clause for public policy reasons), cert. denied, Oklahoma Supreme Court, Docket No. SD-103371 (February 27, 2007); see also *Redman-Tafoya* v. *Armijo*, 138 N.M. 836, 848–51, 126 P.3d 1200 (App. 2005) (claims for disinheritance and removal of executor were statutorily authorized and did "not constitute contests" for purposes of broad in terrorem clause).

We conclude, therefore, that an in terrorem clause violates public policy when its application would interfere with the Probate Court's exercise of its statutorily mandated supervisory responsibilities over the administration of an estate and its superintendence of the fiduciary's statutory obligations. As the defendant argues, the in terrorem clauses in this case implicate the Probate Court's supervision over the fiduciary via the accounting process under § 45a-175, which may be invoked at the request of a beneficiary. See footnote 6 of this opinion. In connection with that accounting, the Probate Court was called on to consider whether Goldstein had properly discharged his responsibilities to minimize the estate's tax burden under § 45a-233 (d) and his broader obligation under § 45a-242 (a) not to mismanage estate assets or to commit waste. See footnotes 7 and 8 of this opinion.

We acknowledge the plaintiff's argument that this public policy exception interferes with a different public policy, namely, "enforc[ing] the clear terms of a testator's or settlor's documents." See, e.g., *Derblom* v. *Archdiocese of Hartford*, 346 Conn. 333, 347, 289 A.3d 1187 (2023) ("[the] primary objective in construing . . . [a] will is to ascertain and effectuate [the testator's] intent" (internal quotation marks omitted)). Although we acknowledge that clauses barring review of the fiduciary's actions are different in kind from contests that attack

the underlying validity of the will or trust document, consistent with discussion at oral argument before this court, we nevertheless conclude that the testator's prerogative to dispose of his or her property as he or she sees fit must yield to the Probate Court's exercise of its power to protect the assets of the estate, which would be impinged if a beneficiary risks disinheritance by bringing, in good faith, potential tax return errors to the attention of the Probate Court. Indeed, as the plaintiff's counsel acknowledged before this court at oral argument, the defendant permissibly could have avoided these potential disinheritance issues by waiting for a hearing on the accounting, rather than raising the issue more proactively. This amounts to a matter of form that would scarcely justify disinheritance as a matter of public policy, especially because the good faith participation of the beneficiary is an important aspect of facilitating the responsibility of the court under § 45a-175. See *In re Estate of Ferber*, supra, 66 Cal. App. 4th 253–54 (The court acknowledged that it "may have the primary responsibility to monitor an executor's actions" but observed that, "as a practical matter, the courts lack the resources to scrutinize every matter for executor malfeasance. They must rely on beneficiaries to be aware of the facts and raise cogent points."). Put differently, the "power of the court is invoked in probate matters, at least in substantial measure, to protect the estate and [to] ensure its assets are properly protected for the beneficiaries. No contest clauses that purport to insulate executors *completely* from vigilant beneficiaries violate the public policy behind court supervision." (Emphasis added.) Id., 253.

We emphasize, however, that this statutory duty and public policy exception protects only those challenges to the actions of a fiduciary that are brought in good faith. Consistent with this court's decision in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, allowing for enforcement of in terrorem clauses against beneficiaries whose challenges to the actions of the fiduciary are found to be brought in bad faith or frivolously balances effectuating the settlor's intent to minimize litigation with enabling beneficiaries to aid the Probate Court in the exercise of its statutory responsibilities to protect the estate. See *In re Estate of Ferber*, supra, 66 Cal. App. 4th 254 (adopting "a balancing process" to protect salutary features of no-contest clause, including discouraging litigation and protecting the testator's intent, by "enforcing [no-contest] clauses against beneficiaries who attempt to oust the executor with a frivolous challenge," while allowing "beneficiaries who believe an executor is engaged in misconduct to bring the potential malfeasance to the court's attention without fear of being disinherited, furthering the public policy of eliminating errant executors"); D. Gordon, supra, 57 Wm. & Mary L. Rev. 463 (proposing burden-shifting scheme that merges probable cause, good faith stan-

dard with public policy concerns as "a more coherent and balanced approach to trust forfeiture clauses" that recognizes "the settlor's interest in facilitating a smooth relationship between [his or] her fiduciar[ies] and beneficiaries without forfeiting the precious oversight that allows trusts to function properly"). But see *In re Estate of Prevratil*, supra, 121 App. Div. 3d 148 (concluding that no-contest clauses precluding challenges of fiduciary's actions are per se void and that such challenges need not be based on probable cause because neither case law nor statutory provisions impose probable cause requirement). Put differently, a finding that a challenge to a fiduciary's action was brought in bad faith or is frivolous means that the statutory duty exception will not, as a matter of public policy, shield the challenging beneficiary from the operation of an applicable in terrorem clause.

Given the trial court's supported finding that the defendant's challenge to Goldstein's filings was brought in good faith, we agree with the Appellate Court's conclusion that "Goldstein unquestionably made a mistake when he listed the defendant's Citizens Bank account as an asset of the estate. In strictly complying with the in terrorem clauses, however, the defendant could not seek judicial review to correct that mistake, without risking forfeiture, despite its potential impact on her finances, the assets of the estate, and the accuracy of . . . Goldstein's filings with the Probate Court and the state of Connecticut. Such a result would violate public policy." (Footnote omitted.) *Salce* v. *Cardello*, supra, 210 Conn. App. 81. We conclude, therefore, that the Appellate Court properly affirmed the judgment of the trial court.[12]

The judgment of the Appellate Court is affirmed.

In this opinion McDONALD, ECKER and ALEXANDER, Js., concurred.

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the defendant had violated the in terrorem clauses in the decedent's will and trust agreement when the defendant challenged the trustee's refusal (1) to remove her bank account from the estate's Connecticut estate and gift tax return, and (2) to deduct the outstanding mortgages from the value of the estate?" *Salce* v. *Cardello*, 343 Conn. 902, 272 A.3d 657 (2022).

(2) "If the answer to the first question is 'yes,' did the Appellate Court correctly conclude that enforcement of the in terrorem clauses in the decedent's will and trust agreement would violate public policy and that the clauses, therefore, were unenforceable as to the defendant's conduct?" Id.

And (3) "[i]f the answer to the second question is 'no,' does the good faith exception to the enforcement of in terrorem clauses apply in this case?" Id.

[2] "The will describes the payee of the promissory note as Mae's deceased husband, John J. Salce." *Salce* v. *Cardello*, supra, 210 Conn. App. 69 n.1.

[3] "In her role as trustee, the defendant took out two loans that were secured by mortgages on Buffalo Bay so that she could pay for expenses related to the property." *Salce* v. *Cardello*, supra, 210 Conn. App. 70 n.2.

[4] The plaintiff also claimed on appeal that the defendant had violated the in terrorem clauses of the will and the trust by filing a creditor's claim against the estate. See *Salce* v. *Cardello*, supra, 210 Conn. App. 74. The Appellate Court held that the trial court's finding that there was no creditor's claim was not clearly erroneous because there was no evidence that the

defendant had ever made a written demand for payment or reimbursement to Goldstein as contemplated by General Statutes §§ 45a-353 (d) and (e) and 45a-358 (a). See id., 75–76. The plaintiff does not challenge the Appellate Court's conclusion in this respect in this certified appeal, and we need not consider it further.

[5] Implicating the third certified question; see footnote 1 of this opinion; the defendant also argues that, "even if the subject in terrorem clause is not unenforceable as against public policy, the defendant's actions here would be subject to the long recognized good faith exception to the enforcement of in terrorem clauses because her efforts to correct the fiduciary's mistakes were taken in good faith and upon probable cause." See *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77. Given our conclusion as to the second certified question, we, like the Appellate Court, need not reach the defendant's arguments as to the third certified question. See also footnote 12 of this opinion.

[6] General Statutes § 45a-175 provides in relevant part: "(a) Probate Courts shall have jurisdiction of the interim and final accounts of testamentary trustees, trustees appointed by the Probate Courts, conservators, guardians, executors and administrators, and, to the extent provided for in this section, shall have jurisdiction of accounts of the actions of trustees of inter vivos trusts and agents acting under powers of attorney.

"(b) A trustee or settlor of an inter vivos trust or the successor of the trustee, settlor or his or her legal representative may petition a Probate Court specified in section 45a-499p for submission to the jurisdiction of the court of an account for allowance of the trustee's actions under such trust.

"(c) (1) Any beneficiary of an inter vivos trust may petition a Probate Court specified in section 45a-499p for an accounting by the trustee or trustees. . . ."

General Statutes § 45a-98 (a) (6) provides in relevant part that probate courts, "to the extent provided for in section 45a-175, [may] call executors, administrators, [and] trustees . . . to account concerning the estates entrusted to their charge . . . ."

[7] General Statutes § 45a-233 (d) provides in relevant part: "No discretionary power or authority conferred upon a fiduciary as provided in sections 45a-233 to 45a-236, inclusive, may be exercised by such fiduciary in such a manner as, in the aggregate, to deprive the trust or the estate involved of an otherwise available tax exemption, deduction or credit . . . except as otherwise prescribed by the testator or settlor, or operate to attract or impose a tax upon a settlor or estate of a testator or upon any other person as owner of any portion of the trust or estate involved. . . . The exercise of a power in violation of the restriction contained in this subsection shall render the action by the fiduciary or any other person with regard to that violation void. 'Tax' means a federal, state, whether that of Connecticut, another state or territory of the United States, the District of Columbia or the Commonwealth of Puerto Rico, local, municipal or foreign, whether national, provincial, state, local or municipal, income, gift, estate, generation-skipping, inheritance, succession, accessions or other death tax, duty or excise imposed on the transfer of property at death or by gift. . . ."

[8] General Statutes § 45a-242 (a) provides in relevant part: "The Probate Court having jurisdiction may, upon its own motion or upon the petition of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, wastes the estate in such fiduciary's charge, or fails to furnish any additional or substitute probate bond ordered by the court, (2) lack of cooperation among cofiduciaries substantially impairs the administration of the estate, (3) because of unfitness, unwillingness or persistent failure of the fiduciary to administer the estate effectively, the court determines that removal of the fiduciary best serves the interests of the beneficiaries, or (4) there has been a substantial change of circumstances or removal is requested by all of the beneficiaries, the court finds that removal of the fiduciary best serves the interests of all the beneficiaries and is not inconsistent with a material purpose of the governing instrument and a suitable cofiduciary or successor fiduciary is available. . . ."

[9] The defendant argues that the plaintiff's reliance on the clause language seeking only to insulate the "good faith" actions of the fiduciary from challenge is ineffectual in this respect because it "would still prohibit a beneficiary from seeking to correct mistakes made by the fiduciary, such as those made by . . . Goldstein on the CT-706 . . . simply by arguing [that] he was acting in good faith, even though he was objectively mistaken." Noting

that the trial court found as a factual matter that "the inclusion of the Citizens [Bank] account and the failure to account for the mortgage[s] in the value of the estate were erroneous actions," she emphasizes that, "[b]y their very nature, mistakes are often actions that are taken in good faith but are nonetheless wrong. There is still a strong public interest in favor of correcting those mistakes to, for example, ensure that an estate tax return is accurate. This interest remains the same *even if the trustee or executor was acting in good faith at all relevant times*." (Emphasis in original.)

[10] Contemporary authorities continue to echo these considerations supporting the use of in terrorem clauses. See, e.g., *Russell* v. *Wachovia Bank, N.A.*, 370 S.C. 5, 12, 633 S.E.2d 722 (2006) (The court observed that no-contest "clauses may protect estates from costly and time-consuming litigation and minimize the bickering over the competence and capacity of testators, and the various amounts bequeathed. . . . No-contest clauses may have the desirable effect of ensuring that the details of a testator's private life are not made public." (Citation omitted; internal quotation marks omitted.)).

[11] The court described the first exception as "not an exception," observing that, "[i]f the action of a [beneficiary] is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary forfeiture clause, for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning." *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176. The court deemed this doctrine inapplicable because the probate appeal "did not . . . raise the question of the construction of [the] will." Id.

[12] Like the Appellate Court, our conclusion as to the public policy exception means that we do not need to consider the third certified question, which asks us to consider the application of the good faith, probable cause exception discussed in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, as an independent basis for relieving the defendant from the application of the in terrorem clauses. The plaintiff's argument that *South Norwalk Trust Co.* is nonbinding dictum leads us to the work of commentators who have suggested that the time is apt for refinement of the law governing such in terrorem clauses, particularly given their relative lack of effectiveness and the increasing transmission of wealth from members of the baby boomer generation to their descendants in coming years, including via the use of nonprobate assets and instruments. See, e.g., M. Begleiter, supra, 26 Ariz. St. L.J. 678–79; G. Beyer et al., "The Fine Art of Intimidating Disgruntled Beneficiaries with *In Terrorem* Clauses," 51 SMU L. Rev. 225, 268–69, 274 (1998); R. Domsky, "*In Terrorem* Clauses: More Bark Than Bite?," 25 Loy. U. Chi. L.J. 493, 505 (1994); E. Shaheen, Note, "In Terrorem Clauses: Broad, Narrow, or Both?," 95 Notre Dame L. Rev. 1763, 1782–83 (2020).

Thus, the continuing vitality of that exception, which is now a nationwide majority position modeled on *South Norwalk Trust Co.*; see, e.g., *Parker* v. *Benoist*, 160 So. 3d 198, 204–206 and n.7 (Miss. 2015); *Russell* v. *Wachovia Bank, N.A.*, 370 S.C. 5, 12, 633 S.E.2d 722 (2006); presents an issue "of public policy, and, [i]n areas [in which] the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 659, 224 A.3d 147 (2020); see also *Butler* v. *Stegmaier*, 77 Va. App. 115, 134–35, 884 S.E.2d 806 (2023) (declining to adopt good faith and probable cause exception to enforcement of no-contest clauses as matter of public policy because "it is the role of the [Virginia] General Assembly to evaluate and adopt or discard particular public policy changes as the elected representatives of Virginians directly accountable to the citizenry"); *EGW* v. *First Federal Savings Bank of Sheridan*, 413 P.3d 106, 111–12 (Wyo. 2018) (noting that Wyoming legislature had "chosen not to incorporate § 3-905 of the Uniform Probate Code," which provides for good faith and probable cause exception, into recently enacted probate code, in declining to apply such exception as matter of common law); K. Blanco & R. Whitacre, "The Carrot and Stick Approach: In Terrorem Clauses in Texas Jurisprudence," 43 Tex. Tech L. Rev. 1127, 1137–38 (2011) (discussing "[the] delicate balance of competing interests and values" that attends formulation and enforcement of rule concerning validity of no contest clauses). We therefore leave to another day—and more aptly to the legislature—the continuing vitality of the good faith and probable cause exception.